### In re WEGMAN PIANO. CO.

(District Court, N. D. New York. December 4, 1915.)

BANKRUPTCY ☞210—COURTS—JURISDICTION.

Where a court of bankruptcy has jurisdiction over a bankrupt's property, its trustee having possession thereof, the court has jurisdiction to determine all conflicting claims to the property by reason of its jurisdiction over the res.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 321–323; Dec. Dig. ☞210.]

In Bankruptcy. In the matter of the bankruptcy of the Wegman Piano Company. Petition by the trustee for an order to show cause, requiring the Commercial Credit Company of Baltimore, Md., and others, to establish their rights to property in the possession of the trustee. Petition referred to master.

See, also, 221 Fed. 128.

The trustee in bankruptcy has filed a petition in this matter, in which it is alleged that he has in his possession certain personal property, money, notes, and accounts which belong to and form a part of the estate and property of the bankrupt; also that other parties, especially Commercial Credit Company of Baltimore, Md., makes certain claim thereto and asserts certain rights therein. The object of the order to show cause granted thereon was to enable this court to ascertain and determine the claims of the parties and their rights

In and to such property, alleged to be in the possession and under the control of such trustee appointed by this court; he being and residing in the Northern district of New York, where the Wegman Piano Company, the bankrupt, resided and had its principal place of business, and in which district it was adjudicated a bankrupt.

On the return of the order to show cause, etc., the said Commercial Credit Company appeared specially and objected to the jurisdiction of this court on certain grounds specifically stated in writing and placed on file. Leave was asked to file further affidavits, etc., which was granted. Since that time, not waiving any right, but for the purpose, it is claimed, of showing that this court has no jurisdiction in the premises, the said Commercial Credit Company has filed an affidavit or statement, signed by A. E. Duncan, its president, taking issue with and denying many of the material allegations of the said petition of the trustee, and on the petition and such answer and objections demands that the petition be dismissed, that the order staying certain action in relation to such property heretofore granted by this court be vacated, and the trustee thereby remitted to a plenary action in the proper jurisdiction, which is claimed to be the state of Maryland.

Wm. K. Payne, of Auburn, N. Y., for trustee in bankruptcy.

Leo Oppenheimer, of New York City (Henry R. Follett, of Norwich, N. Y., of counsel), for Credit Commercial Co.

RAY, District Judge (after stating the facts as above). It is of course true that the Commercial Credit Company has the right to have it determined whether or not this court has jurisdiction of this matter and jurisdiction to grant all, or any, of the relief prayed for in the petition of the trustee. To this end that company may deny material allegations of the petition and present additional facts, and this court will ascertain the truth, what the facts are, so far as they bear on the question of jurisdiction. The Commercial Credit Company asserts that it is a corporation of the state of Delaware, has its place of business or office in the state of New York, and has not filed any certificate with the secretary of state to enable it to do business in the state of New York, and is not doing any business in the state of New York. At the same time it refers to a certain agreement between the Wegman Piano Company and itself, a copy of which it has presented and filed in this proceeding, and the purport of which is that the property referred to (some of it having been converted into money) was sold by the Wegman Piano Company to the Commercial Credit Company prior to the bankruptcy proceedings, and that the said Commercial Credit Company by such agreement also made, appointed, and constituted the Wegman Piano Company its agent to collect and receive amounts due on the notes and accounts, etc., for it, and that the possession of the Wegman Piano Company was the possession of the Commercial Credit Company. The said property, notes, and accounts are in the Northern district of New York, it is claimed, and many of them owed by parties residing in said district. If so, it is difficult to understand why the Commercial Credit Company was not doing business in the Northern district of the state of New York. If it purchased of the Wegman Piano Company notes and accounts belonging to that company, and by the instrument of purchase authorized and empowered that company, residing and having its place of business in said district, to *act as its agent* in New York, and there collect money on notes and

accounts owing by parties residing in New York (Northern district), it would seem that by and through its agent it was doing business in New York. But, however this may be, issue has been raised on material matters going to the jurisdiction, facts asserted to exist by the one party and denied by the other, appearing specially.

This court cannot decide the jurisdictional questions until it knows what the facts are, and as the facts are not conceded, but are in issue, proof must be taken. When the facts bearing on jurisdiction are before the court, it will decide that question. It will hardly be contended that property situated in the Northern district of New York, and in the possession of the bankrupt company at the time of the adjudication, and claimed by it, and which has passed from it directly into the possession and control of the trustee appointed by this court, and which the trustee claims to own, is not within and subject to the jurisdiction of this court. It will hardly be contended that, for the reason the Commercial Credit Company in good faith *claims* that *such* property belongs to it, therefore this trustee must go to Baltimore, Md., to have title and claims thereto adjudicated. If the property itself is in the actual possession of the Commercial Credit Company in the state of Maryland, and that company claims ownership, the trustee undoubtedly will be compelled to go there to obtain it. Herbert v. Crawford, Trustee, and Leblanc, 228 U. S. 204, 33 Sup. Ct. 484, 57 L. Ed. 800, and Murphy v. Hoffman Co., 211 U. S. 562, 29 Sup. Ct. 154, 53 L. Ed. 327, and Babbitt v. Dutcher, 216 U. S. 102, 30 Sup. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969, would seem to be conclusive of the proposition that where the bankrupt has possession of the property, and such possession passes to the trustee, this possession gives to the bankruptcy court control of the res and authority to administer it; and of course authority to administer it includes the power to ascertain and determine *all* conflicting claims thereto, whether the claimants reside in the district where such bankruptcy proceeding is pending or in some other state. Same cases.

In Herbert v. Crawford, Trustee, and Leblanc, supra, Moore and Bridgeman planted a crop of rice. July 16, 1906, they filed their voluntary petition in bankruptcy, and adjudication followed, and one Leblanc was duly appointed trustee. Leblanc was later succeeded by Crawford as trustee. June 15, 1906, and 30 days prior to the filing of the petition in bankruptcy, Moore and Bridgeman executed and delivered to the firm of Beaumont Mills a bill of sale of such rice, and, as they claimed, took possession and employed Moore and Bridgeman to harvest it. Leblanc, soon after being elected trustee, used the teams and machinery of the bankrupt to harvest the crop of rice. The Beaumont Mills paid said trustee, Leblanc, for such services in harvesting and handling the rice and delivering it to them at their warehouse under their claim of title. Leblanc turned over the rice without any order of the court. The creditors of the bankrupt Moore and Bridgeman claimed that the rice belonged to the bankrupt and bankrupt estate, and that Leblanc had converted same to his own use and that of Beaumont Mills. Such creditors instituted summary proceedings against the trustee, Leblanc, to determine title and charge Leblanc with the

value. Leblanc was a member of the firm of Beaumont Mills. The District Court entertained the summary proceedings, and held that the rice belonged to the bankrupt and came into the hands of Leblanc as trustee, and that he improperly delivered it to the Beaumont Mills, and charged him with its value, $11,651, and directed that he pay that sum into court within 10 days. Leblanc was without funds to make the payment, and claimed the right to withdraw that amount of money from the funds of the Beaumont Mills, which he did against the protest and objection of the other members of that firm, and deposited same in the registry of the bankrupt court. Prior to Leblanc's withdrawal of the money the other members of the firm of Beaumont Mills instituted a suit in the state court to enjoin Leblanc from withdrawing such funds to pay into court, and the state court granted the injunction prayed for. Leblanc acted in defiance of this injunction. Leblanc either resigned as trustee or was removed, whereupon Crawford was elected trustee of the estate in bankruptcy. Further facts are stated in the opinion of the court as follows:

"The Beaumont Mills, at once, filed a supplemental petition in the state court, making the bank and Crawford, trustee, defendants, and praying judgment against both of them for the partnership money in their hands, and for other and further relief. Crawford, in turn, immediately brought this bill, in the bankrupt court, to enjoin the Beaumont Mills from prosecuting their suit against him in the state court. He insisted that the bankrupt court had jurisdiction of the res, and was alone authorized to determine his right to retain the $11,651 paid over to him as trustee. He contended, also, that the order of December 17, 1907, in the summary proceedings, was not only conclusive that the bankrupt court had jurisdiction of the res, but he also insisted that, as the Beaumont Mills had taken part in that litigation, they were bound by the finding that the crop belonged to Moore & Bridgeman. A decree was rendered in Crawford's favor by the District Court."

The Circuit Court of Appeals affirmed the District Court, and on appeal to the Supreme Court of the United States it was held that whatever the legal and equitable rights of Beaumont Mills in the rice, Moore and Bridgeman, and later Leblanc, as trustee, engaged in gathering, threshing, hauling, and delivering the rice, and that this *physical* possession gave the bankrupt court control of the res and authority to administer it, along with all other property in their physical possession when the petition was filed; that "that petition operated as an attachment and brought the rice into the custody of the bankrupt court." The court then quoted from Murphy v. Hoffman Co., 211 U. S. 562, 569, 570, 29 Sup. Ct. 154, 53 L. Ed. 327, and said:

"Under these decisions the *physical* possession of the crop brought the property within the *exclusive* jurisdiction of the bankrupt court."

As to the use by Leblanc of the partnership funds to pay his obligation to the bankrupt estate the court held that, as he had no right to take the money from the firm's assets, he had converted *its* funds and was accountable in the state court, as the $11,651, value of the rice, had not been marked or set apart as a specific fund to represent the rice, or shown that Leblanc withdrew the specific money received by Beaumont Mills for the rice. As Crawford, who succeeded Leblanc, received the money from Leblanc with notice as to where it

came from, it was held he could be sued in the state court therefor, it not being the money or property of the bankrupt estate, but that the state court could not determine the right to the rice or its proceeds, and that Crawford could proceed in the United States District Court against the Beaumont Mills to recover the rice or its proceeds or value.

It is clear, therefore, that if these notes and accounts, books of account, and cash received by the Wegman Piano Company are to be considered as in the physical possession of that company at the time the petition was filed, and as having passed to the physical possession of the trustee, the District Court for the Northern District of New York has full and complete jurisdiction, as its trustee is within its jurisdiction with the res and was appointed by it. Indeed, the trustee has no right to surrender them until ordered to do so by this court.

Before passing on the question of jurisdiction, it is essential that this court know who had the actual physical possession of the property in question and all the facts bearing on that question. In Murphy v. Hoffman Co., 211 U. S. 562, 568, 569, 29 Sup. Ct. 154, 156 (53 L. Ed. 327), the court said and held:

"But where the property in dispute is in the actual possession of the court of bankruptcy, there comes into play another principle, not peculiar to courts of bankruptcy, but applicable to all courts, federal or state. Where a court of competent jurisdiction has taken property into its possession, through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. The court having possession of the property has an ancillary jurisdiction to hear and determine all questions respecting the title, possession, or control of the property. In the courts of the United States this ancillary jurisdiction may be exercised, though it is not authorized by any statute. The jurisdiction in such cases arises out of the possession of the property, and is exclusive of the jurisdiction of all other courts, although otherwise the controversy would be cognizable in them. Wabash Railroad v. Adelbert College, 208 U. S. 38, 54 [28 Sup. Ct. 182, 52 L. Ed. 379]. Accordingly, where property was in the possession of the bankrupt at the time of the appointment of a receiver, it was held that the bankruptcy court had jurisdiction to determine the title to it as against an adverse claimant, and that the receiver had no right to deliver it to him without the order of the court. Whitney v. Wenman, 198 U. S. 539 [25 Sup. Ct. 778, 49 L. Ed. 1157]."

It may be a question whether some of this property or some of these property rights were "property in the possession of the bankrupt." In 2 Remington on Bankruptcy, § 1810, p. 1704, it is said:

"Mere rights of action for money judgments or decrees in personam, and for debts owing to the bankrupt, etc., where no tangible property is involved, cannot be said to constitute property in the bankrupt's possession at the time of bankruptcy, and therefore the bankruptcy does not necessarily draw litigation in relation thereto into the forum of the bankruptcy court."

No case or authority is cited. But money and promissory notes are tangible property. Book accounts are or may be evidences of an indebtedness, and can it be said that the trustees in bankruptcy does not have possession of the accounts of a bankrupt when he has in his possession the books and evidences of the indebtedness? Is not this constructive possession? In 2 Remington, § 1820, p. 1715, it is said, citing authority:

"No matter in what capacity the bankrupt may be holding, if he have actual possession, custody, or control, it is the bankruptcy court to which resort must be had."

At page 1698, § 1807, vol. 2, the same author says:

"Possession by the bankrupt may give jurisdiction to the bankruptcy court, even if the possession is not exclusive, and regardless of the capacity in which he holds, whether in his own right or *as agent* for another."

Herbert v. Crawford, 228 U. S. 204, 33 Sup. Ct. 484, 57 L. Ed. 800, above cited and quoted, is cited as authority. In Re Smith (D. C.) 3 Am. Bankr. Rep. 95, 100 Fed. 795, the bankrupt was actually in possession of the property as agent of his wife, but the bankruptcy court directed the property turned over to the trustee, subject to the right of the wife *in that court* to establish her title. In O'Dell v. Boyden, 150 Fed. 731, 80 C. C. A. 397, 10 Ann. Cas. 239, 17 Am. Bankr. Rep. 756, the question was as to the actual possession of a seat or membership in a Stock Exchange, and whether or not it was such possession as gave the bankruptcy court exclusive jurisdiction to determine questions of lien, etc. The court said:

"The 'seat' or 'membership' continued to be the 'seat' of Henrotin, and was a pecuniary asset which passed to his trustee. It was as much in his custody and possession as such a species of property is capable of. To deny the trustee's possession would be to deny the capability of possession of a chose in action or other incorporeal right or equity. The possession may be constructive, and not manual; but it is only so because such property is not capable of a more tangible custody. Only through a court of equity can the pecuniary value of such an asset be realized to creditors or assignees. Only by decree in personam compelling the bankrupt member can such a transfer of membership be effectuated as will put the buyer in the place of Henrotin as a member. Over him for that purpose the bankrupt court has exclusive control, and in this sense, also, may it be said that the 'seat' or 'membership' was in custodia legis when the trustee sought the aid of the court to adjudicate the claims and liens asserted by O'Dell."

Is or is not the possession of the books of account, orders, correspondence, bills, etc., made out by the bankrupt and passing to the trustee the necessary "constructive possession"? When this court is informed as to what the property consists of, the evidence of its existence, possession of money and of books, papers, etc., relating thereto, and the nature and character of claimant's evidence of ownership, etc., if any, it will be able to determine the questions of possession and jurisdiction.

There will be an order referring the petition, answering affidavits, and questions involved to Irving Bacon, Esq., of Auburn, N. Y., as special master, to take all evidence offered by the respective parties bearing on the question of jurisdiction, with directions to report same to the court with all convenient speed, together with findings of fact