**Petition of SCHWARTZ et al. MEEHAN v. SCHWARTZ. In re HABLOW.**

(Circuit Court of Appeals, First Circuit. August 6, 1925.)

Nos. 1782, 1850.

1. **Bankruptcy ⬅⟶217(½) — Bankruptcy court is without jurisdiction to enjoin institution in state court of action of conversion against trustee.**

Under Rev. St. § 720 (Comp. St. § 1242), the bankruptcy court is without jurisdiction to enjoin the institution in a state court of an action of conversion against the trustee in bankruptcy; jurisdiction of bankruptcy court under Bankruptcy Act, § 2, cl. 15 (Comp. St. § 9586), to protect itself in the possession of assets of bankrupt, in its actual custody and constructive possession, being limited to such cases as those in which it may be authorized by any law relating to proceedings in bankruptcy.

2. **Pleading ⬅⟶287—Disclaimer made in open court could not be assailed as ineffectual merely because signed by counsel.**

Disclaimer made in open court could not be assailed as ineffectual, merely because signed by counsel of party disclaiming.

3. **Bankruptcy ⬅⟶305—Fact of defendant's filing of disclaimer of right to possession, or of title to funds of goods, asserted to have been fraudulently transferred to her, precluded entry of decree as against her.**

In bill by receiver of bankrupt estate in which plaintiff was subsequently substituted as trustee, instituted solely to determine defendant's title to and right of possession of goods attached, or of the funds derived from their sale, the allegation being that such goods were fraudulently transferred by bankrupt to defendant, fact that defendant disclaimed purpose to assert or claim either possession or title to the goods or of the funds precluded entry of decree against her, so that as to her the bill was correctly dismissed, but retained, for purpose of decree, that receiver turn over the funds in his possession as such to himself as trustee in bankruptcy, and for purpose of allowing receiver to settle his account.

Petition to Revise and Appeal from the District Court of the United States for the District of Massachusetts; James M. Morton, Judge.

In connection with the bankruptcy proceedings of Bertha Hablow, alleged bankrupt, two causes arose—the first being a petition by petitioning creditors for a restraining order against Harry Schwartz and others, which was granted; and the second being a bill by Harry W. Meehan, receiver of bankrupt estate in which he was later substituted as trustee, against Esther Goldman Schwartz. From a decree rendered in the latter suit, plaintiff appeals, and in the first cause Harry Schwartz and others bring a petition to revise. Order in first cause re-versed, and restraining order dissolved, and decree in second cause affirmed.

In Case 1782:

George R. Farnum, of Boston, Mass., for petitioners.

Joseph B. Jacobs, of Boston, Mass. (Jacobs & Jacobs, of Boston, Mass., on the brief), for respondents.

In Case 1850:

Joseph B. Jacobs, of Boston, Mass. (Jacobs & Jacobs, of Boston, Mass., on the brief), for appellant.

George R. Farnum, of Boston, Mass., for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. These two cases were argued together, and, as they grow out of the same bankruptcy case, may be considered together. The following statement of facts found by the referee, to whom a petition to have Bertha Hablow, doing business under the name of E. Goldman, adjudicated a bankrupt, was referred, will serve to make clear the issues raised in each:

Bertha Hablow, the bankrupt, was married about 22 years ago to one Goldman, who was a tinsmith, but after marriage he and his wife opened a provision store in Malden, Mass. There was a daughter by this marriage named Esther Goldman, who became of age on May 15, 1924. After the death of Goldman, his widow married a man named Hablow, who deserted her soon after marriage. Mrs. Hablow and her daughter, Esther Goldman, continued the provision business which she and her first husband had previously conducted. In 1921 the mother sold this business and a house in Malden owned by her, and with the proceeds started a dry goods store in Dorchester, Mass. The mother and daughter worked together in the store; the business was run under the name of E. Goldman; credit was established with several dry goods houses in Boston under this name; a bank account was opened under it and checks drawn over the signature of E. Goldman.

The mother held herself out as the proprietor of this business, and salesmen and credit men knew her only in connection with the purchase and sale of goods, and extended credits to her. Up to the fall of 1923 she paid her bills with reasonable promptness and established a fairly good credit.

In June, 1923, Esther Goldman was married to Harry Schwartz. A short time be-

fore her marriage, her mother had decided to open another store to be managed by the daughter and Schwartz and a lease of a store in Fitchburg, Mass., was taken in the name of the daughter. In connection with purchasing goods for this store, the buying was principally done by Schwartz and the daughter; but, by their direction, credit was extended and goods were charged to the E. Goldman account, and all the parties from whom goods were bought were led to believe that these goods were bought for the same party who operated the Dorchester store.

The mother owned a house in Mattapan, Mass., which she sold to provide money for the Fitchburg venture, and went to board in Roxbury or Dorchester. The Fitchburg store was opened for business about the middle of July, 1923, and operated under the name of Fitchburg Dry Goods Shop.

On the day previous to her marriage with Schwartz, Esther Goldman filed a business certificate with the city clerk of Fitchburg, as required by the laws of Massachusetts, which was signed by her, and in which she stated that the business was to be conducted under the name of the Fitchburg Dry Goods Shop. The Dorchester store was looked after by the mother, and the Fitchburg store by her daughter and Schwartz.

In the fall of 1923 the E. Goldman account, with several large creditors, became in arrears, and they pressed for payment. After conferences between the alleged bankrupt and her son-in-law, Schwartz, upon one side, and several creditors from whom goods had been purchased for the Dorchester and Fitchburg stores upon the other, a meeting of creditors was held in January, 1924, which was attended by the bankrupt and her son-in-law. An arrangement was then made with the creditors looking to a continuation of the business which, according to the inventory then taken, appeared to be solvent.

With the consent of a committee of the creditors, the Dorchester store was closed, and the stock of merchandise therein was shipped to the Fitchburg store. In the latter part of February, 1924, a second meeting of creditors was called, and at this meeting an attorney representing the daughter appeared and stated that the business was and had always been operated by her, that she was a minor, and that he had been instructed by her to disaffirm her obligations to her creditors. A suggestion of a composition offer was made by him, which the creditors refused to consider.

The referee has also reported that he found "that the alleged bankrupt, Bertha Hablow, was proprietor of the business, both at the Dorchester and Fitchburg stores; that the merchandise was bought by her, was charged to her account, and that she is the person obligated to pay the bills for such merchandise;" that, on March 20, 1924, the date of filing the involuntary petition against her, the fair value of the assets owned by her was less than the amount of her liabilities; that on or about February 26, 1924, she transferred all of the merchandise owned by her in connection with her dry goods business to her minor daughter, Esther Goldman, and that said transfer was made "for the purpose of concealing the same from her creditors and for the purpose of defrauding them"; that the said Esther Goldman Schwartz, with her husband, Harry Schwartz, had conspired with the bankrupt to assert the false and fictitious claim that the merchandise was the property of the daughter, and that this claim was made for the purpose of hindering, delaying, and defrauding the creditors of the bankrupt.

On June 2, 1924, Bertha Hablow was adjudicated a bankrupt. On February 29, 1924, certain creditors brought suits against the said Bertha Hablow, and attachments were made of the stock of merchandise in the Fitchburg store by Deputy Sheriff Charles H. Kenney. On March 20, 1924, these creditors, together with others who intervened, filed an involuntary petition in bankruptcy against Bertha Hablow, doing business under the name of E. Goldman. On May 28, 1924, several of these creditors received a letter from the attorney of Esther Goldman Schwartz in which suit was threatened "for damages caused to her business by your wrongful acts." The letter did not contain any statement in regard to what these alleged wrongful acts were; but it may be reasonably inferred that they were the attachments of the stock of goods in the Fitchburg store.

On May 29, 1924, a petition for a restraining order, supported by the affidavit of counsel, was filed by the petitioning creditors, in which an injunction was sought to restrain Esther Goldman Schwartz and Harry Schwartz, their attorneys, agents, and proxies "from instituting any suits against the attaching creditors, as well as against" Charles H. Kenney, the deputy sheriff who had made the attachments.

In the affidavit of counsel it was stated that said suits were threatened to be brought "with the intention of harassing said credi-

tors and the administration of the bankrupt estate, and for the purpose of defeating the bankruptcy proceedings in order that said attaching creditors would release their attachments, and thereby the property be lost to the bankrupt estate." Upon this petition notice was ordered to the said Esther Goldman Schwartz and Harry Schwartz to appear in the bankruptcy court to show cause why the prayer of the petition should not be granted.

A restraining order was ordered to be issued. On June 12, 1924, a motion for the dissolution of this order was filed and after a full hearing was denied July 28, 1924.

[1] No. 1782 is a petition to revise the order of the District Court denying this motion. R. S. § 720 (Comp. St. § 1242), prohibits the granting by any court of the United States of an injunction to stay proceedings in any state court, "except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy." Under this section it is admitted that' the bankruptcy court has jurisdiction to issue a restraining order to prevent the possession of the assets of the bankrupt being taken from the receiver or trustee in bankruptcy or after filing of a petition being placed beyond their reach, so that an equal distribution of the same among the creditors cannot be had. Actions, therefore, which interfere with the possession of the assets of the bankrupt by the Bankruptcy Court, may be enjoined.

Section 2, cl. 15, of the Bankruptcy Act (Comp. St. § 9586), so far as material, is as follows:

" * * * The * * * courts of the United States * * * are hereby invested * * * with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings * * * to * * * make such orders, issue such process, and enter such judgments in addition to those * * * provided for as may be necessary for the enforcement of the provisions of this act."

Under this act the bankruptcy court has jurisdiction to protect itself in the possession of the assets of the bankrupt, not only in its actual custody, but of those in its constructive possession. Orinoco Iron Co. v. Metzel, 230 F. 40, 144 C. C. A. 338. But this jurisdiction is limited to such cases as those in which it "may be authorized by any law relating to proceedings in bankruptcy." It has therefore been held that an action of trover may be maintained in a state court

7 F.(2d)—6

against the trustee in bankruptcy or marshal. In re Russell et al., 101 F. 248, 41 C. C. A. 323; In re Kanter & Cohen, 121 F. 984, 58 C. C. A. 260; In re Spitzer et al., 130 F. 879, 66 C. C. A. 35; In re Mertens & Co., 147 F. 177, 77 C. C. A. 473. See, also, In re Interocean Transportation Co. (D. C.) 232 F. 408; Eyster v. Gaff, 91 U. S. 521, 23 L. Ed. 403; Leroux v. Hudson, 109 U. S. 468, 3 S. Ct. 309, 27 L. Ed. 1000; Herbert v. Crawford, 228 U. S. 204, 210, 33 S. Ct. 484, 57 L. Ed. 800.

The restraining order which was issued in this case did not enjoin the petitioners from bringing any possessory action, but from instituting any suits against the attaching creditors and the deputy sheriff who made the attachments. The suits with which the attaching creditors had been threatened were for damages sustained by one of the petitioners by reason of their wrongful acts, and it is clear that an action for conversion was contemplated. The bankruptcy court is without jurisdiction to enjoin the institution of such a suit in a state court.

No. 1850 is an appeal from a decree of the District Court upon a bill of complaint of Harry W. Meehan, as Trustee in Bankruptcy of the Estate of Bertha Hablow, v. Esther Goldman, Defendant. This bill was filed upon June 10, 1924, and was originally brought by Harry W. Meehan as receiver in bankruptcy for the said Bertha Hablow; but, by order of court, after his appointment as trustee, he was substituted as such in the original bill.

The bill, after alleging the adjudication of Bertha Hablow as a bankrupt, the plaintiff's appointment as receiver and the conduct of business by the bankrupt at the two stores at Dorchester and Fitchburg, as set out in the foregoing statement of facts, in substance, alleged that the said Bertha Hablow transferred the stock of merchandise in both stores to the defendant, at that time a minor; that the transfer was made for the purpose of hindering, delaying, and defrauding the creditors of said Bertha Hablow, of which the defendant had knowledge; that the defendant conspired with the said Bertha Hablow to accomplish this purpose; that the stock of merchandise was then in possession of Deputy Sheriff Charles H. Kenney by virtue of attachment of it made in suits against the said Bertha; that the said attaching creditors and the said Kenney were anxious and desirous of turning the possession of said property over to the court to be sold and the proceeds held

pending the determination of title to the said property.

The prayer of the bill was that a receiver be appointed to take possession of the property described in the bill, and that he be authorized to sell and dispose of the same and hold the proceeds pending the adjudication of the title, that the transfer of property set forth in the bill be declared null and void as a fraudulent conveyance, and the defendant Esther Goldman Schwartz be perpetually enjoined from making or asserting any claim to the ownership of the property described in the bill.

The defendant filed what is designated as a "disclaimer," in which she stated that, when the stock of goods was attached by Deputy Sheriff Kenney, it was her property and not that of said Bertha Hablow; that she had requested him to release the same from attachment and to remove his keeper from the premises, which request he ignored; that thereby she became entitled to bring an action against him and the attaching creditors for the value of said goods in actions of conversion in the state courts of the commonwealth of Massachusetts.

In her substituted answer, filed with the disclaimer, she claimed that the allegations of the plaintiff's bill in regard to a fraudulent transfer were immaterial. The answer admitted the attachment made by Deputy Sheriff Kenney, and that he was holding the same under this attachment, and that she had elected to sue him for the value of said goods in an action of conversion, as well as those upon whose instructions he acted, but that she had been unable to institute said actions because of the restraining order which had been issued by the District Court; that she had elected to bring said actions for the entire value of the said property, and had elected not to follow said goods nor make any further claim thereto, and disclaims any present right, title, or interest in and to said goods as against the plaintiff.

The said Harry W. Meehan had been appointed receiver, and under an order of the court had taken possession of the goods which had been attached, had sold the same, and was holding the proceeds subject to the order of the court. He was afterwards appointed trustee in bankruptcy of Bertha Hablow.

By the decree of the District Court entered in this case, from which appeal is taken, the funds held by Harry W. Meehan, as receiver, derived from the sale of the property, was adjudged to be the property of Harry W. Meehan, as he is trustee in bankruptcy of Bertha Hablow, and he was ordered, as such receiver, to turn over the same to himself as trustee; also "that the bill of complaint, in so far as it asked for affirmative relief against the defendant, be and hereby is dismissed without costs; that the balance of the bill is to stand for the purpose of allowing the receiver to settle his account."

In the memorandum decision filed with the decree, the court said:

"The defendant has disclaimed in open court any title or interest in the attached property out of which the fund resulted, and therefore in the funds, and takes and has always taken the position that she intends to proceed against the sheriff and the plaintiffs in the writs for attaching her property on the original actions at law for conversion in the state court. The receiver in the case stands ready to turn the property over to himself as trustee in bankruptcy if so ordered. The plaintiff was ready in court with witnesses prepared to try out the question of fraud and conspiracy alleged in the bill and offered to prove the same facts as are set forth in Exhibits A and B, annexed to the bill of complaint. I am of opinion, however, that the fraud alleged in the bill is not material by reason of the disclaimer made by the defendant, and an order may be made directing the plaintiff to turn over the funds in his hands to himself as trustee in bankruptcy."

The errors assigned upon the appeal are the ruling of the court that the defendant could disclaim her liability for fraud; that evidence of fraud was immaterial; and not allowing the case to be fully tried on the merits; and in ruling that the disclaimer was not ineffectual because signed by counsel.

[2] In the substituted answer filed by Esther Goldman Schwartz, she included her disclaimer, and stated that she had elected to bring an action for conversion in the state court against the attaching creditors and the sheriff, and that, because of said conversion, she disclaims any present right, title, or interest in the funds in the hands of the receiver.

[3] The learned judge of the District Court, in his memorandum of decision, states that she made this disclaimer in open court. There is therefore no merit in the contention that the disclaimer was ineffectual because not signed by her. The plenary action was brought against her as an adverse claimant,

solely to determine her title to and right of possession of the goods or of the funds derived from their sale, and, having disclaimed her purpose to assert or claim either possession or title to the goods or the funds, no decree could be entered against her, and as to her the bill was correctly dismissed, without costs, but retained for the purpose of making a decree that the receiver turn over the funds in his possession as receiver to himself as trustee in bankruptcy, and that the bill stand for the purpose of allowing the receiver to settle his account.

In No. 1782, the order of the District Court is reversed, and the restraining order is dissolved, with costs.

In No. 1850, the decree of the District Court is affirmed, without costs.