### In re DAILEY.

#### Petition of CITY OF NEW YORK.

(Circuit Court of Appeals, Second Circuit. December 11, 1918.)

· No. 41.

BANKRUPTCY ⬦288(1)—SUMMARY ORDERS—ADVERSE CLAIMS.

> A city, which under the terms of a contract for the removal of refuse, on its abandonment by the contractor, took possession of his plant to continue the work pending a new contract, is an adverse claimant, and a court of bankruptcy is without jurisdiction by a summary order to require it to surrender the property to the contractor's trustee in bankruptcy.

Petition to Revise Order of the District Court of the United States for the Southern District of New York.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In the matter of John D. Dailey and De Witt C. Ivins, individually and as copartners as Dailey & Ivins, bankrupts. On petition by the City of New York to revise order of District Court. Reversed.

This cause comes here from the United States District Court for the Southern District of New York, on petition to revise an order requiring the city of New York to deliver certain property of the bankrupts to their trustee.

On August 12, 1913, a contract was entered into between the city of New York and John D. Dailey and De Witt C. Ivins, doing business under the firm name of Dailey & Ivins. The contract provided for the removal and final disposition by Dailey & Ivins of ashes, street sweepings, and rubbish collected in the boroughs of Manhattan and the Bronx, as well as from Blackwell's and Randall's Islands and from steam tugs and other vessels in the harbor. The contract was commenced on January 2, 1914, and was to run for a period of three years, with a right to renew for another period of two years. In January, 1916, the contract was renewed for a period of two years, which was to begin on January 2, 1917, and end January 1, 1919. In carrying on the work under their contract Dailey & Ivins furnished a certain plant, scows, and other means of transportation and final disposition of the ashes, etc.

On March 2, 1918, Dailey & Ivins abandoned the contract and refused to proceed thereunder, and on the same day between 11 a. m. and 11:30 a. m. there was served on John D. Dailey, one of the members of the firm of Dailey & Ivins, a notice by the commissioner of street cleaning of the city of New York which read as follows: "Under and by virtue of the powers and provisions contained in your contract, dated August 13, 1913, the street cleaning commissioner hereby 'takes possession of the plant, scows, and other means of transportation and final disposition of the ashes, the street sweepings and rubbish, etc.,' belonging to or heretofore used by you."

On the same day that this notice was given the commissioner of street cleaning took physical possession through the employés of his department of the plant before mentioned belonging to Dailey & Ivins and used by them in carrying out work under the contract, all of said plant being located within the city of New York. On the same day, March 2, 1918, at 2:30 p. m., an involuntary petition in bankruptcy was filed against Dailey & Ivins, alleged bankrupts, in the United States District Court for the District of New Jersey, and simultaneously an order was made appointing temporary receivers of the property. And on that day at 10:05 p. m. the commissioner of street cleaning was served with a copy of an order made by Judge Mayer, of the Southern District of New York, appointing George G. Tennant and Charles H. Smith ancillary receivers of Dailey & Ivins. This order contained a provision restraining, among others, the city of New York, its agents, servants, and employés, from removing, transferring, or otherwise interfering with the property, assets, and effects of Dailey & Ivins. The receivers, shortly after their appointment, informed the commissioner that they could not and would not carry out the provisions of the contract which Dailey & Ivins had made with the city of New York.

On May 4, 1918, District Judge Augustus N. Hand, of the Southern district of New York, entered an order requiring the city of New York and its street cleaning commissioner, and their respective agents, employés, and representatives to deliver to George G. Tennant, as trustee, possession of all the property of the bankrupts in its and their possession within ten days after service of a copy of the order. It is this order which the city of New York seeks to have revised. At the hearing prior to the making of the order the city of New York and the commissioner filed with the District Court a written objection to the court's entertaining jurisdiction of the matter, on the ground that the court was without jurisdiction.

Alexander & Ash, of New York City (Mark Ash, of New York City, of counsel), for trustee in bankruptcy.

William P. Burr, Corp. Counsel, of New York City (Terence Far-

ley, William E. C. Mayer, and Joseph L. Pascal, all of New York City, of counsel), for the city of New York.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The fact cannot be disputed that at the time this order was made the property here in controversy was in the actual possession of the city of New York, and that it claimed then, as it claims now, the right to retain it in its possession, basing its right on the provisions of the contract which it made with the bankrupts. This claim is an adverse one, and it is advanced against the trustees of the bankrupts. It does not rest upon pretense and sham, but is real and not colorable. It raises a serious question of law. The question, therefore, is whether the District Court had jurisdiction to dispose of it in a summary proceeding, or whether the petitioner as a matter of right is entitled to have the matter disposed of in a plenary action.

The Supreme Court in Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, declared that a bankruptcy court has jurisdiction in a summary proceeding to compel a surrender to a trustee in bankruptcy of property in the hands of a third party which the latter holds as the agent of the bankrupt and to which he asserts no adverse claim. It went on, however, to say that the court must decline to finally adjudicate on the merits if the respondent asserted that he had the right to possession by reason of a claim adverse to the bankrupt, which claim is not merely colorable, but real, even though fraudulent and voidable.

And we held in Re Midtown Contracting Co., 243 Fed. 56, 155 C. C. A. 586, that whether a claim is real or colorable does not depend upon whether it turns upon a question of fact or upon a question of law. If the claim rests upon mere pretense of fact or of law, it is colorable. But it is not colorable if it is put forth in good faith and is real. In the latter event we said the trustee must institute an independent action in a court having jurisdiction of the subject-matter and have the claim regularly adjudicated, as the bankrupt himself would have done if bankruptcy proceedings had not been pending and he desired to obtain possession of the property. The Supreme Court in Wilds v. Department of Education, 245 U. S. 654, 38 Sup. Ct. 12, 62 L. Ed. 532, declined to grant a writ of certiorari to review the decision in the Midtown Case, and it remains the law in this circuit and is decisive of the question herein presented.

The claim arises under a contract entered into under section 544 of the Greater New York Charter (Laws 1901, c. 466). It is a public contract authorized by law, and relates to the performance of an important and well-established public duty. It involves a public work of great magnitude and necessity, which the public interests demand should be performed speedily and without interruption. Dailey v. City of New York, 170 App. Div. 267, 279, 156 N. Y. Supp. 124.

Prior to the abandonment of the contract by the bankrupts they had been paid by the city of New York under the contract over the sum of $2,775,000; and upon the abandonment of the contract the commissioner of street cleaning advertised for bids to complete the work,

but the bids were rejected, as the prices demanded were deemed excessive. The city claims that paragraphs O and Q of the contract authorized and empowered it to take possession of the property "pending proceedings to cancel and annul" the contract, and that it is entitled to retain the possession until either the contract is relet or the contract is completely performed by the city itself. Whether it is right or wrong in this contention is not the question before us. It is sufficient for the present purpose to say that the claim is not colorable, and therefore must be determined in a plenary action.

The order under review is reversed.