In re BOROK.

No. 309.

Circuit Court of Appeals, Second Circuit.
May 18, 1931.

Archibald Palmer, of New York City (Sydney Basil Levy, of New York City, of counsel), for appellants.

Lewis, Marks & Kanter, of Brooklyn, N. Y. (Oscar A. Lewis and Lloyd B. Kanter, both of Brooklyn, N. Y., of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above).

The order appealed from permits the trustee to recover from an adverse claimant three classes of property: (1) Uncollected accounts receivable assigned to Mayerson prior to the bankruptcy petition as security for a loan; (2) moneys collected by Mayerson on assigned accounts after the bankruptcy petition was filed; and (3) moneys, including the proceeds of checks of the bankrupt's customers, which were delivered to Mayerson the day before the petition was filed. The chief question presented is whether the court had jurisdiction to grant such relief in summary proceedings.

It is argued by the trustee that, despite the assignment, all accounts outstanding on the date of the petition remained in the "possession" of the bankrupt and so fall within the *doctrine of property in custodia legis,* as to which the bankruptcy court has summary power. One cannot speak of "possession" of a chose in action in the same sense as of tangibles; but if such terminology is to be used *it would seem that the bankrupt was as much in "possession" of the assigned accounts as he could be of any chose in action.* He had the right to collect from the debtors and to use the proceeds as he saw fit. The debtors had received no notification of the assignment; and Mayerson, though the agreement declared him to be irrevocably constituted the assignor's attorney for collection, was not to use this power unless the assignor was in default under the agreement, and there is no suggestion that default had occurred prior to the filing of the petition. Under such circumstances we believe that the bankruptcy court has power to determine summarily the respective rights of the trustee and the assignee in respect to the assigned accounts outstanding at the date of the petition. So it was held by Judge Rellstab in In re Gottlieb & Co., 245 F. 139, 146 (D. C. N. J.), affirmed in 257 F. 72 (C. C. A. 3), without reference to this point.

That it is possible for a bankrupt to have "possession" of intangible property in such sense as to give the bankruptcy court summary jurisdiction over adverse claims, appears from numerous cases. Chicago Board of Trade v. Johnson, 264 U. S. 1, 44 S. Ct. 232, 68 L. Ed. 533; O'Dell v. Boyden, 150 F. 731, 10 Ann. Cas. 239 (C. C. A. 6); In re Ransford, 194 F. 658 (C. C. A. 6); Orinoco Iron Co. v. Metzel, 230 F. 40 (C. C. A. 6); In re Roman, 23 F.(2d) 556, 558 (C. C. A. 2). It is true that in Chicago Board of Trade v. Johnson, the Chief Justice said, at page 12 of 264 U. S., 44 S. Ct. 232, 234, of his opinion: "Membership on the Board of Trade is different from a mere chose in action, like a simple claim or debt asserted against another, and only to be enjoyed after its satisfaction or enforcement. It is a continuously enjoyed 'incorporeal right.'"

There is an implication in these words that one cannot properly be said to be in possession of an ordinary debt or claim. But that was said in distinguishing the case from a suit by the trustee to collect a debt from a resisting debtor, which must certainly be by plenary action. A similar distinction may be made in the case at bar. Were the trustee attempting to collect the accounts from the bankrupt's debtors, he would have to resort to a plenary suit; he could not claim to be in "possession of the property," for existence of the property, i. e., a valid chose in action, is the issue in dispute. But where, as here, the debtor is not in an adverse attitude toward the bankrupt and the dispute is between the bankrupt's trustee and the claimant of a lien upon the debt, we think the debtor may be deemed to hold the debt for the bankrupt in the same sense that the Board of Trade held the seat for the bankrupt, and "possession" of the chose in action may be deemed to pass to the trustee in the one case as much as in the other. So the bankruptcy court may draw to itself the summary determination of which claimant is the proper obligee of the chose in action. This we suggested, though it was not decided, in Re Roman, supra.

The case of Copeland v. Martin, 182 F. 805 (C. C. A. 5) might, at first sight, appear to be opposed to this conclusion; but it differs in important respects. It involved an outright assignment rather than one for security, the debtor had been notified of the assignment, and no right to collect was reserved to the assignor. It would seem that complete title and "possession" of the chose in action had been transferred to the assignee before the bankruptcy. In re Paramount Fireproof Door Co., 43 F.(2d) 558 (D. C. E. D. N. Y.), relied upon by the appellant, was also a case where the debtor had been notified of the assignment, and apparently the assignor had not retained the right to collect for his own use. These cases are not, therefore, inconsistent with the views we have expressed.

Having found that the bankruptcy court had jurisdiction to determine claims to the accounts outstanding on the date of the peti-

tion in bankruptcy, we pass to the validity of the assignment to Mayerson. Under the doctrine of Benedict v. Ratner, 268 U. S. 353, 45 S. Ct. 566, 69 L. Ed. 991, the assignment was void and ineffective to create a lien on the accounts receivable. There is no dispute that the assignor retained complete dominion over them. It is argued that he was obligated to substitute new accounts for those collected, but neither the terms of the agreement nor the conduct of the parties bear out any such contention. It is futile to talk of substitution where the assignor had agreed to assign, and did assign weekly, all newly created accounts without regard to how much he had collected on those previously assigned. Hence the order appealed is correct in so far as it requires the appellants to turn over to the trustee the uncollected assigned accounts and to account for moneys collected subsequent to the filing of the bankruptcy petition.

■ But the case is otherwise as to moneys (including proceeds of customers' checks) paid to Mayerson by Borok. The latter had no possession of these when the petition was filed. The accounts as choses in action had ceased to exist, and the money into which they had been converted was held by an adverse claimant. Hence there was no summary jurisdiction unless Mayerson's claim was no more than colorable. In re Gottlieb & Co., supra; Harrison v. Chamberlin, 271 U. S. 191, 46 S. Ct. 467, 70 L. Ed. 897; In re Dailey, 255 F. 529 (C. C. A. 2).

Whether the money turned over by Borok was intended as a partial payment on the notes, which were not yet due, or as a delivery of security in substitution for the collected accounts does not appear; nor would it seem to matter. In either case the sum would be recoverable only if the payment were a voidable preference or a fraudulent transfer. There is no evidence that Mayerson knew or had reason to know of Borok's insolvency or the impending bankruptcy, unless such an inference may be drawn from the making of a voluntary payment so contrary to the prior methods of business between the parties. The special master drew this inference and concluded that Mayerson's claim of a right to retain the money was so unsubstantial as to be merely colorable. The inference of fact may be justifiable, but with the conclusion that the adverse claim was merely colorable we cannot agree. As is said in Harrison v. Chamberlin, 271 U. S. 191, 194, 46 S. Ct. 467, 468, 70 L. Ed. 897, "An actual claim may be adverse and substantial even though in fact 'fraudulent and voidable.'" Whether Mayerson knew of Borok's insolvency or the impending bankruptcy were disputed questions of fact which the adverse claimant was entitled to have determined in a plenary suit unless he consented to its summary determination. Accordingly so much of the order as relates to moneys received prior to the bankruptcy petition must be reversed, with directions to dismiss the proceeding as to this part of the relief sought, but without prejudice to the trustee's right to bring a plenary suit.

■ Error is assigned to the order in so far as it charged against appellants fees of the special master, stenographic fees, and attorneys' fees. By virtue of section 2 (18) of the Bankruptcy Act, 11 USCA § 11 (18), the court has power to tax costs "whenever they are allowed by law." Rule 68 of the Equity Rules (28 USCA § 723) provides that the compensation to be allowed a special master shall be fixed by the court and charged against such of the parties in the cause as the court shall direct. Bankruptcy Rule 15 of the District Court also provides for fees of special masters. The practice of taxing such fees as costs against the unsuccessful party in appropriate cases is too well known to require the citation of authorities. Whether the master's fees should be apportioned in the present case, since we have determined that the receiver and trustee must fail as to part of the relief sought, will be open for consideration by the District Court when the cause is remanded.

■ Section 38 of the Bankruptcy Act (11 USCA § 66) gives the referee discretion to authorize the employment of stenographers for reporting the proceedings, and Judge Brown considered this authority for taxing such fees as costs against an unsuccessful claimant. In re Todd, 109 F. 265 (D. C. S. D. N. Y.). But this section of the act is not applicable to hearings before a special master. In re Stark, 155 F. 694 (D. C. E. D. N. Y.). Authority for taxing as costs stenographic fees incurred on such a hearing is to be found in Equity Rule 50. See Ex parte Peterson, 253 U. S. 300, 315, 40 S. Ct. 543, 64 L. Ed. 919; In re Weissman, 267 F. 588 (D. C. Conn.).

The appellee has advanced neither reason nor authority to sustain charging against the appellants counsel fees for the attorneys of the receiver and trustee. This was clearly error. In re Rome, 162 F. 971 (D. C. N. J.); In re Ghiglione, 93 F. 186 (D. C. S. D. N. Y.).

The order is reversed, and the cause remanded for entry of an order in conformity with this opinion.